460 So.2d 1161 (1984)
Roosevelt HUGHES, Plaintiff-Appellant,
v.
QUERBES & NELSON, INC., et al., Defendants-Appellees.
Roosevelt HUGHES, Plaintiff-Appellant,
v.
PUMP MASTERS, INC., et al., Defendants-Appellees.
Nos. 16691, 16692-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Writ Denied February 4, 1985.
*1162 C. William Gerhardt, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by J.W. Jones, Shreveport, for Querbes & Nelson, et al.
Cook, Yancey, King & Galloway by Brian A. Homza, Shreveport, for Pump Masters, Inc., et al.
*1163 Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
MARVIN, Judge.
In this appeal plaintiff, who sued in tort and in worker's compensation after being struck by a truck while on a mission as a "messenger" for his employer, seeks to increase the tort damages awarded, and to reverse the rejection of his demands for total and permanent disability.
Plaintiff's employer, a Shreveport insurance agency, also appealed to preserve its right to claim further reimbursement from the tort defendants for any additional worker's compensation liability that we might find.
The tort defendants answer the appeal, contending that excessive damages were awarded and that the trial court erred in failing to find plaintiff comparatively at fault under CC Art. 2323. In all respects, we affirm.

SCOPE OF REVIEW
Questions of fault generally present only factual issues. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Towns v. Georgia Casualty and Surety Co., 459 So.2d 124 (La.App.2d Cir.1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984); Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App.3d Cir.1984). Similarly, questions of total and permanent disability primarily present factual questions. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979); Spillers v. City of Shreveport, 367 So.2d 135 (La.App.2d Cir.1979); Peck v. T G & Y Stores Co., 451 So.2d 1327 (La. App. 1st Cir.1984). In the absence of an erroneous interpretation or application of law to factual circumstances found by a trial court, our review of alleged factual error is under the manifest error, or clearly wrong, standard. Arceneaux, supra.
Damage awards are reviewed under the abuse of discretion standard. Reck v. Stevens, 373 So.2d 498 (La.1979).
We find nothing clearly wrong in the trial court's conclusions that the accident was solely the fault of the tort defendants and that plaintiff was not totally and permanently disabled by the accident. We also find that the damages awarded were neither excessively high nor excessively low so as to constitute an abuse of the trial court's discretion.
We adopt the trial court's reasons for judgment and, where appropriate, we shall quote or summarize these findings.

THE ACCIDENT
The accident occurred about 9:40 a.m. on January 19, 1982, as plaintiff was walking across Texas Street at its intersection with Market Street. He said he waited at the northeast corner of the intersection until the Market Street light turned green and signaled "WALK" before walking south across Texas Street in the crosswalk.
The defendant truck driver, proceeding southerly on Market, said he slowed in response to traffic in front of him, saw that he had a green light, and began to turn left on Texas at about 4-5 mph. He said he looked but did not see any pedestrian traffic crossing Texas. The truck driver said he heard a thump on the left side of his truck about the time he entered the northernmost eastbound lane of Texas. He said he then brought his truck to a stop within 5 or 6 feet. After departing his truck he saw plaintiff (for the first time), then sitting in the street.
Plaintiff said he remembered nothing other than being struck on his right side by "something" while he was looking "straight ahead" walking across the street. He said he was rendered unconscious. Plaintiff was then taken to the emergency room of a local hospital, where he said he regained consciousness and where he was treated and released. Plaintiff returned to work about a month later and continuously worked for the insurance agency for 21 months thereafter.
The defendant truck driver was questioned immediately after the accident by Officer Dorothy Land, who investigated *1164 the accident for the Shreveport Police Department. The driver stated that he had not seen the pedestrian as he made his turn, and that he had momentarily looked away as he turned. The officer was unable to find any witnesses to the accident.
The plaintiff attempted to prove the defendant's negligence by showing that the driver had encroached into one of the westbound lanes while he was making his turn. There was some confusion in the testimony of the officer as to exactly where the plaintiff was sitting and where the defendant's truck was positioned when she arrived at the scene, whether the driver had in fact encroached into a prohibited lane, however we are satisfied that the evidence more than supports the trial court's finding that the accident was caused solely by the fault of the driver.
The driver testified that he did not see any pedestrians in the crosswalk. He further testified that he looked away as he made his turn. The plaintiff testified that he was crossing with the pedestrian light and in the crosswalk. The driver testified that he heard a "thump" on the left front of his truck immediately before he stopped, opened the door and saw plaintiff on the ground. The fact that the driver testified at trial that the pedestrian light read "DON'T WALK," but did not say anything comparable at the scene, does not indicate that the trial court abused its prerogative by giving no weight to that part of the driver's testimony, and by finding the driver solely at fault. The driver and plaintiff were proceeding initially in the same direction and the driver should have known that his left turn would be made from a position toward which any pedestrian walking south would not be facing. The burden of proving a plaintiff's comparative negligence rests with the defendant who alleges it.

DISABILITY AND CAUSE
Plaintiff was 70 years old when struck by defendant's truck. He had had at least three partially disabling accidents before a fourth partially disabling accident in October 1975. He had "a lifting injury ... in 1971; a pedestrian auto accident ... in 1973; and an ... auto accident in 1974," before an October 1975 rear end collision in which he also suffered some partial disability. Hughes v. Cox, 365 So.2d 1387 (La. App.2d Cir.1978).
The 1971 lifting accident, requiring lumbar disc surgery, produced a medically rated 20 percent permanent partial disability to plaintiff's low back and right leg.
The 1974 auto accident, also requiring disc surgery (cervical), produced a medically rated 15 percent permanent partial disability of the cervical spine. The 1975 auto accident produced an additional five percent medically rated permanent partial disability to the body as a whole, resulting in an accumulated 40 percent medically rated permanent partial disability of the body as a whole.
After the 1982 accident, plaintiff continued working for 21 months (February 22, 1982, to October 14, 1983) when he terminated his employment with the defendant insurance agency about two weeks before this case was tried. No doctor, not even Dr. Gleason, suggested to plaintiff that he quit work or that he was unable to continue working.
Three doctors did not believe that the 1982 accident totally and permanently disabled plaintiff. Two of these doctors had treated plaintiff for his previous injuries. One examined and evaluated plaintiff for the purposes of rendering his expert opinion in this case. A fourth doctor, plaintiff's treating physician (Dr. Gleason), opined that the 1982 accident caused plaintiff some permanent injury and additional disability.
Dr. Gleason assessed an additional five percent disability to plaintiff's back and ten percent to plaintiff's right leg and attributed this assessment to the 1982 accident. The other doctors disagreed that any further disability should have been assessed and attributed no permanent effect to the 1982 accident.
*1165 Important considerations made by the other doctors and by the court included the absence of any complaints by plaintiff of back pain for two months following the 1982 accident, plaintiff's continuing to work after the accident, even longer hours than before, and plaintiff's statements to Dr. Gleason to the effect that he was experiencing "very few symptoms and was basically asymptomatic" before the 1982 accident.
Dr. Gleason also attributed a slight atrophy (5 mm.) of plaintiff's right leg to the 1982 accident. The trial court found Dr. Gleason's testimony unpersuasive because it was contradicted by other doctors and because plaintiff had misrepresented his prior condition to Dr. Gleason.
All the medical witnesses, including Dr. Gleason, agreed that if the January 1982 accident caused disabling pain, the pain would have manifested itself almost immediately after the accident. Plaintiff did not complain of back pain until some two months after the accident. Dr. Gleason resolves the apparent inconsistency of his agreement with the other doctors on the pain issue and of his disagreement with them on the causation issue by explaining that he believed plaintiff's later statements that he first experienced back pain four or five days after the accident, and because he believed that pain in other areas of plaintiff's body might have "overruled" his back pain.
The court agreed with the expert neurosurgeon that the 5 mm "atrophy" or difference between plaintiff's left and right leg was clinically insignificant in the light of plaintiff's surgical history and had probably existed before the 1982 accident. The court noted that Dr. Gleason admitted that the atrophy could have existed before he detected it. The court also noted that the medical testimony established that the atrophy had not increased since being observed by Dr. Gleason and measured by a neurosurgeon.
In Walton v. Normandy Village Homes, Inc., 460 So.2d 1166 (La.App.2d Cir.1984), this court addressed the law regarding a plaintiff's burden of proof in a worker's compensation case. There we recognized the presumption that a
"... claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, and symptoms of the disabling condition commenced at the time of the accident and continuously manifested themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." 460 So.2d at 1173.
We also noted that
"a pre-existing condition does not preclude recovery for a disabled claimant, rather the employer takes the employee as he is. The fact that the disease alone may have disabled the plaintiff eventually in its ordinary course of progress is not the inquiry. The claimant's disability is compensable if the pre-existing disease is somehow activated or precipitated into disabling manifestations as a result of the work-related accident." 460 So.2d at 1173.
The presumption, of course, is not absolute, but is rebuttable, and plaintiff must prove that he was in good health before the accident, that symptoms of the disabling condition commenced at the time of the accident and continuously manifested themselves afterwards. Robertson v. Scanio Produce, 449 So.2d 459, 461 (La. 1984). This plaintiff has failed in his burden of proving disability and the other factors and is not entitled to the presumption. Walton, supra.
The function of the trial court is to assess witnesses' credibility and to give appropriate weight to testimony. Absent manifest error, we will not disturb this function. We find no manifest error, either in the trial court's assessment of the plaintiff's testimony or in the assessment of the medical testimony. Dr. Gleason's opinion was contradicted by other experts.
Plaintiff also contends that the trial court erred in failing to find him an *1166 "odd-lot" disabled laborer. A claimant may be considered totally disabled if, after his injury, he is considered an "odd-lot" in the competitive labor market, i.e. that he may be capable of holding various jobs from time to time, but that the kind of work he may perform is so limited in quality, dependability or quantity that a reasonably stable market for that work does not exist. Malone-Johnson, § 276. Under this approach the claimant has the burden of proving that injury causing the disability arose out of and within the course and scope of his employment.
In the present case the trial court found that plaintiff failed to prove that the 1982 accident caused permanent and total disability. The trial court therefore did not consider the "odd-lot" doctrine. The record supports the trial court's findings in this respect and we find no error.
We also find no error with respect to penalties and attorney fees under the worker's compensation law. The extent and the cause of plaintiff's disability was genuinely disputed. The time between the accident and the time, and reason why, plaintiff stopped work afford a legitimate reason for the employer to question plaintiff's claims of disability from the 1982 accident. The employer was not arbitrary or capricious in refusing to pay the compensation demanded.

QUANTUM
The trial court awarded plaintiff $20,000 in general damages and almost $6,000 in special damages. Plaintiff claims this is an inadequate award; the truck defendants claim the award is excessive.
The evidence establishes and the court recognized that even though plaintiff did not prove total and permanent disability, he nonetheless suffered a painful injury of relatively short duration. The court found that plaintiff suffered some pain for several weeks. In assessing the damages and the award that would make the plaintiff whole, the court took into account that a 70-year-old would suffer greater damage than would a younger person.
Under the circumstances of this case, the award of $26,590.58 is not an abuse of the trial court's discretion.

DECREE
For the reasons assigned by the trial court and summarized here, the judgment is AFFIRMED. Costs of this appeal are assessed equally to plaintiff and to the truck defendants.