MARVIN, Judge.
In this appeal of a judgment awarding damages arising out of a collision between defendant’s passing vehicle and plaintiff’s left-turning vehicle, two of the three judges of the original appellate panel proposed to reverse the trial court’s finding defendant solely at fault. A dissent by the third judge provoked a reargument before a five-judge appellate panel as required by LSA-Const. Art. 5, § 8b.
On reargument, we affirm the trial court’s finding of fault, amend to reduce the general damage award of $7,500 to $5,000, and, as amended, affirm the judgment.
*409 FACTS
The accident occurred on U.S. Highway 84 in DeSoto Parish early on a cloudy and dry spring morning as plaintiff was going to work. Highway 84 is a two-lane paved highway, the dimensions of which at and near the scene are not shown in the record. Both vehicles were proceeding easterly. The accident report and record shows plaintiff was driving about 15 mph and slowing, while defendant was driving about 40 mph, following plaintiff.
After the vehicles traversed an overpass, plaintiff, Ms. Walters, activated her left turn signal and slowed to turn into her place of employment. The left front and side of Ms. Walters’ car and the right side of defendant Lewing’s car collided at some point in the westbound lane of the highway. Lewing saw Ms. Walters’ left-turning signal. On two occasions after the accident, defendant stated that the accident was his fault and that he was “in a hurry to get to work.”
The road into which plaintiff was turning crossed Hwy. 84 and was an intersecting road. Passing on Hwy. 84 is prohibited within 100 feet of such an intersection. LRS 32:76. The investigating officer charged defendant with violating this statute. In the other respect, LRS 32:104 prohibits a left turn unless it can be accomplished with reasonable safety. Both passing and left-turning have been characterized as dangerous maneuvers. Hawkins v. Gilfoil, 483 So.2d 1082 (La.App. 2d Cir. 1986); Jones v. Hall, 419 So.2d 523 (La. App. 2d Cir.1982).
Notwithstanding Lewing’s admission of fault and his being charged with a statutory violation, Ms. Walters would not be free of fault if Lewing’s car was in the passing lane before she began her left turn. Jones v. Hall, supra.
The record supports the conclusion that Lewing was not in the passing lane when Ms. Walters began her left turn. Ms. Walters said she had looked in her rear view and side mirrors and had seen Lewing’s car behind her in the eastbound lane and that she had not noticed him attempting to pass. She said Lewing’s car was still behind her in the eastbound lane when she began her turn.
Q. I want to get down to specifics now, right when you were making your left hand turn, right then, not three seconds before, but right when you are making your left hand turn, did you look in your side view mirror or your rear view mirror?
A. I looked in both.
Q. And you looked in both and you didn’t see Mr. Lewing?
A. I seen the car behind me, and I assume it was Mr. Lewing, because he hit me and took me on into the Plant.
Q. You saw a car behind you right when you were making your left hand turn?
A. Yes, sir.
Q. And you don’t know if actually it was his car or not?
A. Mr. Lewing’s car, I knew it was Mr. Lewing’s car after he took me over to the Pecan Plant, but I didn’t know it was his car you know behind me, I am talking about the person himself, I am talking about him in the car and I didn’t know it was him.
Q. The damage to your car was mainly in the front part of the car, was it not? ...
A. No, because when he hit me, like this is the front of the car (indicating) okay, he came this way because I turned like this, he came this way, because he met my driver’s side door and my side and that’s what made that front end come off between the offices.
The position of the two vehicles after impact, as drawn by the investigating deputy sheriff, lends support to plaintiff’s version.
Lewing, driving about three times as fast as Ms. Walters, said he was “no more than two ... no less than 1½” car lengths following behind Ms. Walters when he pulled out to pass. Lewing gave no signal of his intention to pass.
I was already coming ... up behind her ... so when I come on around her ... *410 and my friend hollered ... “watch out,” and I looked over and she was turning into me ...
Under the described circumstances and recognizing the trial court’s credibility findings, we cannot say the trial court was clearly wrong in allocating fault. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Ms. Walters gave a left turn signal. She saw what was there for her to see. She began her left turn when Lewing was “coming ... up behind her” within 1½ — 2 car lengths before he came “on around her” at a much greater speed.
QUANTUM
A trier of fact has great discretion in assessing damages in tort actions. Despot v. Stromatt, 488 So.2d 1104 (La.App. 2d Cir.1986). Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Reck v. Stevens, 373 So.2d 498 (La. 1979); Norris v. Pool Well Service, Inc., 460 So.2d 1117 (La.App. 2d Cir.1984); Hughes v. Querbes & Nelson, Inc., 460 So.2d 1161. (La.App. 2d Cir.1984), writ denied.
Only after an articulated analysis of the facts discloses an abuse of discretion may the award be considered excessive or insufficient. Reck v. Stevens, supra.
By stipulation, the narrative report of the chiropractor, Dr. W.J. Strong, who treated plaintiff following the accident, was filed in the record. The narrative indicates that the plaintiff suffered a number of whiplash-type injuries. Those injuries were listed:
Severe acute traumatic cervical hyper-flexion, hyper-extension-type dynamics with resultant strain-sprain complex; with cervical wall splinting, with subocci-pital cephalgia and sublaxation of the atlanto/axial articulation. Also muscle spasms of the left lumbar area.
Plaintiff was treated by Dr. Strong on five occasions between May 13, 1985, and May 21, 1985, for about two weeks after the accident. Plaintiff was then released to return to work.
The plaintiff did not return to work until six months later in December 1985. She did not return to the chiropractor for further treatment after May 21, 1985.
Plaintiff did not explain why she did not seek further treatment. The briefs indicate that perhaps the chiropractor was not available to her but the record contains no such evidence. Although plaintiff said she was treated by another doctor shortly before trial and was given a prescription for pain medication, she did not identify the other doctor or present his testimony.
Plaintiff testified that she worked sorting pecans off a conveyor belt which required her to lean over the belt and use her upper body and back. She worked from 7:00 a.m. until 6:00 p.m. with a 30 minute break for lunch and 15 minute breaks in the morning and in the afternoon. She said that she returned to work in December 1985 because of economic necessity and continues since that time to work in pain. Plaintiff claimed lost wages, however, only for the two weeks she was under the care of the chiropractor, from May 11 to May 21, 1985, and does not assert that she lost any time off after returning to work.
Plaintiffs father, sister and girlfriend of her brother testified in a general and not detailed way that the plaintiff showed painful symptoms after the accident and was unable for an unstated period of time to perform normal housekeeping duties.
The lay testimony is offset by plaintiffs conduct and the medical narrative. Plaintiff sought treatment for only two weeks following the accident. She claimed lost wages only for the two weeks following the accident. Because of these circumstances, we find that the highest genera^ damage award to the plaintiff we can affirm is $5,000. Coco, supra.
DECREE
The judgment is amended to reduce the general damage award from $7,500 to $5,000 and, in all other respects, the judg *411 ment, as amended, is AFFIRMED at appellant’s cost.
LINDSAY, J., concurs in part and dissents in part with written reasons.
SEXTON, J., concurs in part and dissents in part for the reasons assigned by LINDSAY, J.