647 So.2d 440 (1994)
Margaret BROOKS, Plaintiff-Appellant,
v.
HENSON FASHION FLOORS, INC., et al., Defendant-Appellee.
No. 26378-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
*441 Ronald J. Miciotto, Shreveport, for plaintiff-appellant.
Cook, Yancy, King & Galloway by Charles G. Tutt, Shreveport, for defendant-appellee.
Before MARVIN, BROWN and PRICE, pro tem., JJ.
BROWN, Judge.
Plaintiff, Margaret Brooks, an accounting manager for Mall St. Vincent, was injured when she slipped and fell in the hallway outside her office. The hallway was being widened by defendant, Henson Fashion Floors, Inc. Although the trial court's factual findings are clearly supported by the record, its conclusion that defendant's behavior did not constitute negligence is erroneous. We reverse and render.

FACTS
In February 1992, plaintiff worked in the management office of Mall St. Vincent in Shreveport, Louisiana. The hallway outside the office was being widened by defendant from three to seven feet to accommodate file cabinets and a copy machine. This hallway was not generally open to the public but was traversed regularly by office employees. In the process, one wall was removed, leaving the regular carpeted three-foot wide path and a bare concrete floor which was to be carpeted.
On February 25, 1992, Henson employees spread glue on the surface of the exposed concrete floor in preparation of laying carpet padding. A small number of office workers was informed by a Henson employee of the *442 operation and warned to stay clear of the glue; however, no other steps were taken to warn or protect pedestrians. Later in the morning, plaintiff, who had not been warned about the glue, left her office. She found the carpeted portion of the hallway blocked by tool boxes, tools, carpet pad scraps and a garbage can. Plaintiff stepped onto the concrete portion and slipped and fell in the freshly laid glue, injuring her left shoulder, elbow and knee.
Plaintiff filed suit against Henson and its insurer, State Farm Insurance Companies, alleging negligence. In its written opinion the trial court correctly set forth the issue as follows:
[T]he actions to be considered are the placement of tools and scraps in the carpeted portion of [the] hallway, and the application of glue to the adjacent concrete floor without placing warning signs or restricting the parameters of the area with tape. (emphasis added).

DISCUSSION
It is well settled that a court of appeal may not set aside the finding of fact of a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong". Rosell v. ESCO, 549 So.2d 840 (La. 1989); Clark v. Ark-La-Tex Auction, Inc., 593 So.2d 870 (La.App. 2d Cir.1992), writ denied, 596 So.2d 210 (La.1992). Duty questions, including whether a duty extends to protect a particular plaintiff against a particular harm, are essentially legal questions. Montgomery v. Max Foote Construction Company, 621 So.2d 90 (La.App. 2d Cir. 1993). Whether a duty is breached, however, is a question of fact. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993). With these precepts in mind, we start by considering the trial court's findings concerning negligence.

Negligence of the Defendant
The trial court made five findings of fact regarding negligence on the part of Henson:
1) Mrs. Brooks was aware of the Henson employees' presence for several days prior to the accident, and knew they were at the office to install carpeting, therefore making hazards related to the work anticipated.
2) Henson employees had taken steps on the morning of the accident to admonish mall employees to be careful in the area.
3) According to the testimony of mall employees present on the morning of the accident, the glue was readily apparent and visible to anyone who looked.
4) Other employees had negotiated the hallway without difficulty prior to plaintiff's fall.
5) The decision to step around the scraps and onto the concrete floor was made by plaintiff with a total disregard for her pathway on to the concrete floor.
The trial court found these facts to be dispositive of the negligence issue and dismissed plaintiff's claim. For review purposes, we will employ a duty/risk analysis. Dixie Drive It Yourself System of New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). For liability based upon negligence to attach, plaintiff must prove the following: 1) the conduct in question was a cause-in-fact of the resultant harm; 2) the defendant owed a duty to the plaintiff; 3) the duty owed was breached; and 4) the harm caused was within the scope of the breached duty. Mundy, supra.
The cause-in-fact issue relates solely to an act or omission that results in harm or damage to another. This is a common sense inquiry into the logical consequences of conduct and not into the absurd extremes. Weaver v. Valley Electric Membership Corp., 615 So.2d 1375 (La.App. 2d Cir.1993). This cause-in-fact issue is confined to whether there is the requisite connection between plaintiff's particular injuries and defendant's particular conduct. Obviously, the blockage of the three-foot wide carpeted passageway, together with the failure of Henson's employees to warn plaintiff that they had applied adhesive to the concrete area was a cause-in-fact of plaintiff's injuries.
The next inquiry is whether defendant owed a duty to plaintiff. Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La. 1990). The application of a slippery substance to a concrete floor creates an obvious *443 risk. This risk is increased when the adjacent traveled area is blocked, requiring the pedestrian to step onto the slippery concrete floor. Clearly, there is an ease of association between a duty to warn pedestrians of precarious footing and the risk that those, like plaintiff, who have not been warned could fall and be injured. Henson thus owed a duty to plaintiff to warn of the hazardous floor condition created by its employees.
Generally, a party who owes a duty breaches that duty when he fails to exercise reasonable care in protecting those at risk. (emphasis added). What is reasonable care depends on the degree of the likelihood and seriousness of injury compared to the cost of prevention. Conway v. O'Brien, 111 F.2d 611 (2d. Cir.1940); Dobson v. Louisiana Power and Light Company, 567 So.2d 569 (La.1990), reh'g denied. In the instant case, the likelihood of injury was relatively high since it is commonly recognized that pedestrians are prone to fall when stepping in slippery substances on concrete floors. Furthermore, the injuries associated with slip and fall cases can be severe and debilitating.
In contrast, the cost of precautions would have been nominal. The trial court concluded that there were no warning devices, including caution signs and bright colored tape, at the accident site. A Henson employee stated that these devices were not utilized in an effort to keep open a passageway for mall employees. The Henson employee, however, also stated that a safety pylon could have been used without denying access through the hallway. Several witnesses testified to the absence of any warning devices around the work area. Such devices were cheap, readily available and both practical and effective. Henson employees had a duty to alert pedestrians of the hazard and breached that duty by not utilizing the simplest of warning devices.
Finally, we must consider whether the risk that someone might slip and fall was within the scope of the duty owed to the plaintiff by Henson. A risk is within the scope of a defendant's duty if the defendant could have reasonably anticipated harm arising in a particular manner. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). The rule of conduct relied upon by plaintiff was designed to protect against the exact risk to which plaintiff was exposed. Henson's employees could have reasonably anticipated that blockage of the carpeted portion of the passageway would cause a person to step onto the wet concrete floor and slip and fall. The risk of injury from a slip and fall was within the scope of the duty to warn pedestrians of the hazard created by the application of glue to an otherwise bare concrete floor.
Based upon the foregoing analysis, Henson's actions in leaving tools and scraps on the carpeted portion of the hallway, together with its failure to warn of the wet concrete floor, created an unreasonable risk. Under the circumstances, Henson had a duty to protect plaintiff from the risk of injuries associated with a slip and fall. Henson breached the duty it owed plaintiff and was therefore negligent. The trial court's factual findings, while relevant to the issue of comparative negligence, are not dispositive of the issue of negligence on the part of Henson. The trial court's holding was thus clearly wrong, warranting reversal.

Apportionment of Negligence
Upon a finding of negligence, LSA-C.C. Art. 2323 reduces the claim of plaintiff in proportion to her degree of fault. Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La.1981). In allocating comparative fault, this court must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Ingram v. Caterpillar Machinery Corp., 535 So.2d 723 (La.1988), reh'g denied; Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La. 1985), reh'g denied. Some of the factors which may influence the degree of fault to be assigned are: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. *444 Watson, supra; Gray v. Louisiana Downs 585 So.2d 1238 (La.App. 2d Cir.1991).
Plaintiff testified that at the time of the accident, her attention was focused on the tool box, tools scraps and garbage can blocking the carpeted portion of the hallway and that she did not see the adhesive on the concrete floor. As noted by the trial court, other mall employees who traversed the hallway that morning managed to step over the obstacles without mishap. Witnesses also testified that the carpet adhesive was readily apparent and visible to those who looked. Plaintiff was aware of the presence of Henson employees and the ongoing renovation work and should have proceeded with more than usual caution. We conclude that plaintiff's inattention to where she stepped constitutes negligence. Plaintiff's conduct in stepping on the wet concrete, however, resulted from inadvertence rather than an awareness of danger. Plaintiff's substandard conduct posed no risk of harm to others. Henson's fault, on the other hand, created a risk of harm to every person who traveled the hallway. We conclude that plaintiff's fault was less than that of defendant and apportion the percentages of fault at 40% to plaintiff and 60% to defendant.

Damages
Following the accident, plaintiff complained of injuries to her shoulder, knee and elbow. Plaintiff made an immediate visit to a hospital emergency room where her condition was reported as follows: slight tenderness with motion in the left shoulder with no swelling or bruising; full range of motion in left elbow with minimal tenderness and no swelling or bruising; full range of motion in left knee with slight tenderness.
Plaintiff's pain persisted and increased. On September 24, 1992, she sought treatment for pain in her shoulder. The attending physician, Dr. Edwin Simonton, noted the restriction of all ranges of motion and diagnosed plaintiff's complaint as tendinitis. Dr. Simonton testified that the tendinitis could have been caused by the shoulder being jammed into the acromion process when plaintiff slipped and fell in the glue. Plaintiff again saw Dr. Simonton on August 30, 1993, complaining of pain and swelling in her left knee. The doctor noted that plaintiff had a full range of motion in the knee. However, there was swelling behind the knee and X-rays showed a slight lateral angulation of the patella.
Plaintiff, who was 65 years old and in good health at the time of the accident, testified 20 months after the accident that she continues to have pain in her knee daily and intermittent pain in her shoulder. She takes various medicines for pain and swelling and regularly applies a heating pad and ice packs to her knee. Plaintiff testified that she has modified her behavior since the accident. She has been forced to restrict her recreational activities such as gardening, traveling, shopping and going to movies because standing or sitting for long periods of time is uncomfortable. Plaintiff's ability to work has also been adversely affected. She cannot walk up stairs to get records or retrieve files from lower file cabinets and is unable to service the computer printer in her office.
In making an initial award of damages at the appellate level, we are not limited to either the highest or lowest amount which could be affirmed. Instead, based upon the record, we determine an award which would be just. Gray, supra. From our review of the record, we conclude that an award of $20,000, reduced by plaintiff's percentage of fault, will adequately compensate her for pain and suffering. Compare Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992); Dowe v. Grady, 540 So.2d 1040 (La.App. 2d Cir.1989); Walters v. Lewing, 519 So.2d 408 (La.App. 2d Cir.1988), reh'g denied; Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2d Cir.1986); Hughes v. Querbes & Nelson, Inc., 460 So.2d 1161 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1265 (La.1985).
Plaintiff presented medical bills totaling $1,164.00 as exhibits at trial and is entitled to this amount, reduced by her percentage of fault.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered as follows:
*445 IT IS HEREBY ORDERED that there be judgment in favor of Margaret Brooks against Henson Fashion Floors, Inc., and State Farm Insurance Companies in the amount of $21,164 reduced by plaintiff's percentage of fault, 40%, or $12,698.40, together with legal interest thereon from the date of judicial demand until paid.
IT IS FURTHER ORDERED that court costs at both the trial and appellate level be borne by defendants.
REVERSED AND RENDERED.